1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    JOSEPH MINIACE,                              No. C 04-03506 SI

9              Plaintiff,                         **ORDER DENYING MOTION TO
                                                  INTERVENE; DENYING PMA'S
10       v.                                       MOTION FOR PRELIMINARY
                                                  INJUNCTION; AND GRANTING IN
11   PACIFIC MARITIME ASSOCIATION,                PART THE CORRIGAN DEFENDANTS'
                                                  MOTION TO DISMISS**
     Defendant.
12   _____/

13   PACIFIC MARITIME ASSOCIATION,

14            Counterclaimant and
              Cross-Claimant,
15       vs.

16   JOSEPH N. MINIACE; JEANNETTE COBURN;
     MICHAEL E. CORRIGAN;
17   BENMARK, INC.; CORRIGAN & COMPANY;
     and BENMARK WEST,
18
              Counterdefendant and
19            Cross-Defendants.
     _____/
20

21            On July 8, 2005, the Court heard oral argument on ILWU-PMA's motion to intervene, PMA's motion

22   for a preliminary injunction, and a motion to dismiss brought by Michael Corrigan, Corrigan & Company and

23   Benmark West.  Having carefully considered the arguments of counsel and the papers submitted, the Court

24   hereby: DENIES the motion to intervene; DENIES the motion for a preliminary injunction; and GRANTS IN

25   PART and DENIES IN PART the motion to dismiss.

26

27                              **BACKGROUND**

28            Pacific Maritime Association is a non-profit mutual benefit corporation, whose members are maritime

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

shipping carriers that service ports on the West Coast. PMA negotiates and administers collective bargaining agreements for longshoremen and other port workers, as well as oversees employment benefit plans for the workers. Plaintiff Joseph Miniace was President of PMA from 1996 until March 2004. Thomas McMahon was PMA's Chief Financial Officer from 1982 until his death on May 3, 2002.

The dispute before this Court surrounds a death benefit payment under a Secured Executive Benefit Plan (SEBP) to McMahon's widow, Jeannette Coburn, of more than $9,000,000. PMA received $986,383, the amount of premiums paid on McMahon's behalf. PMA claims that Miniace and McMahon altered the SEBP in 2002 to pay the bulk of the death benefits to McMahon's heirs. PMA also claims that the Board of Directors did not know of the 2002 alteration to the SEBP.

PMA terminated Miniace's employment on March 17, 2004. As a result, Miniace filed a complaint against PMA in California Superior Court on July 21, 2004, alleging breach of contract, violation of the labor code, promissory estoppel, and intentional infliction of emotional distress. PMA removed the case to this Court, and filed counterclaims and cross-claims against Miniace, Jeannette Coburn, Michael Corrigan, Benmark, Inc., Corrigan & Company, and Benmark West.

Now before the Court is the motion by the Trustees of the ILWU-PMA[1] Pension and Welfare Plan to intervene; PMA's motion for a preliminary injunction against Jeanette Coburn; and a motion to dismiss brought by Michael Corrigan, Corrigan & Company and Benmark West.

**DISCUSSION**

**I.    Motion to intervene**

In their capacity as Trustees of the ILWU-PMA Pension and Welfare Plans, James Spinosa, Robert McEllrath, Joseph Wenzl, and Ray Ortiz bring a motion to intervene in this action. They claim that intervention is appropriate under Federal Rule of Civil Procedure 24(a) and (b). Intervenors claim that Miniace, a trustee of the ILWU-PMA pension plan ("the Plan"), breached his fiduciary duty to the Plan because he had a financial incentive in his contract with PMA to reduce contributions to the Plan. The proposed complaint in intervention names Miniace and PMA as defendants.

---

[1] ILWU is the International Longshore and Warehouse Union.

At issue is the Twenty-Sixth Amendment to the Plan. The Plan had a requirement that annual employer contributions must be at least the amount of administrative costs and payments made from the Plan. However, Miniace proposed a modification in 1997 that allowed employer contributions to be sufficient if they consisted of only 85% of the Plan expenditures. This proposal was accepted by the President of ILWU and became the 26th Amendment. In order for the Amendment to go into effect, the Plan Trustees were required to seek approval from the Pension Benefits Guaranty Corporation ("PBGC"). Miniace submitted the Amendment to the PBGC without informing other Plan Trustees, and the Amendment was approved.[2]   According to intervenors, the Amendment has resulted in contribution reductions of at least $100 million in Plan Years 1999 and 2000.

Intervenors allege that Miniace breached his fiduciary duty to the Plan because he had an incentive scheme under his PMA contract that rewarded any decrease in contributions to the Plan. Intervenors also assert that PMA breached its fiduciary duties because it "appointed Miniace as a Trustee while conditioning his compensation on successful implementation of the 26th Amendment." Mot. at 4. Intervenors draw on language in Miniace's Complaint that he "performed all conditions, covenants and policies required on his part to be performed in accordance with the terms and conditions of his contract with PMA." Miniace Compl. at ¶ 16. Intervenors contend that one of these accomplishments was his ability to amend the Plan. See Miniace Compl. at ¶ 12.

Intervenors contend that intervention is appropriate because they learned from Miniace's complaint that his compensation at PMA was conditioned in part on the implementation of the 26th Amendment. Once they learned of this, intervenors claim that they requested information regarding

any financial incentives provided by PMA related to the 26th Amendment, but PMA refused their request. Additionally, intervenors claim that they cannot now obtain this information because of the protective order among the parties in this case. Intervenors assert that their "principal objective . . . in intervening in this action is to gain access to information regarding the financial incentives offered by PMA to Miniace, which, according to the Complaint, were conditioned on the manner in which Miniace carried out his fiduciary duties as Trustee

---

[2] The foregoing facts have been taken from intervenors' complaint, which the Court accepts as true for purposes of this motion.

United States District Court
For the Northern District of California

of the ILWU-PMA Pension Plan." Reply at 2.

The intervenors provide only a brief discussion of whether they meet the standard for intervention under Rule 24(a) or (b). PMA and Maritech Corporation filed an opposition to the motion to intervene, which was joined by Miniace. In their reply, intervenors relegate Rule 24(a) to a single footnote and only discuss whether intervention is appropriate under Rule 24(b) "for the limited purpose of modifying the parties' stipulated blanket protective order." Reply at 2.

**A.     Rule 24(a)**

A motion to intervene under Rule 24(a) is subject to the following four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Forest Conservation Council v. U.S. Forest Service, 66 F.3d 1489, 1493 (9th Cir. 1995) (quoting Sierra Club v. U.S. Environmental Protection Agency, 995 F.2d 1478, 1481 (9th Cir. 1993)).

The Court finds that intervention under Rule 24(a) is not appropriate because the intervenors have not demonstrated a "signficantly protectable" interest relating to the property subject to this litigation. This requirement is met only if the resolution of the pending claims actually will affect the intervenor. Arakaki v. Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003). Intervenors' claims relate to Miniace's and PMA's involvement in the Plan, specifically the enactment of the 26th Amendment. These claims are not impacted by the current claims before this Court.

Miniace in his complaint seeks compensation under his employment contract with PMA. Miniace has asserted causes of action for breach of contract, Labor Code violations, promissory estoppel and intentional infliction of emotional distress. See Medina Decl., Ex. 1. These claims do not relate to the ILWU-PMA Pension Plan or the 26th Amendment, and intervenors can file their complaint as an independent action that will not be impacted by the resolution of the action currently before this Court.

The Miniace Complaint does make a brief reference to the 26th Amendment. See Medina Decl. Ex.

United States District Court
For the Northern District of California

1 at ¶ 12. However, this is background information that demonstrates the quality of his performance as

President. The counter-claims and cross-claims asserted by PMA and Maritech Corporation do not even

mention the 26th Amendment of the ILWU-PMA Pension Plan. See Medina Decl., Ex. 2. These claims

involve the Secured Executive Benefits Plan ("SEBP"), alleged misappropriation of directors' fees, and

unauthorized executive benefits. In order to resolve the current disputes, it will not be necessary to litigate the

meaning, negotiation or implementation of the 26th Amendment. Nor will it be necessary to litigate the fiduciary

duties owed to the ILWU-PMA Pension Plan by Miniace and PMA. Therefore, the Court finds it inappropriate

for the intervenors to "inject new, unrelated issues into the pending litigation." Arakaki, 324 F.3d at 1086.

Based on the Court's finding that the intervenors have failed to demonstrate a "signficantly protectable"

interest relating to the property subject to this litigation, the Court DENIES the motion to intervene pursuant

to Rule 24(a).

**B.      Rule 24(b)**

Intervention may be allowed at the Court's discretion when the intervenors' claim and the current action

have a common question of law or fact and allowing intervention "will not unduly delay or prejudice the

adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). In determining whether a "common

question" exists, courts should construe the requirement liberally. Stallworth v. Monsanto Co., 558 F.2d 257,

265 (5th Cir. 1977). However, intervention under Rule 24(b) is "not intended to allow the creation of whole

new lawsuits by the intervenors." Deus v. Allstate Insurance Co., 15 F.3d 506, 525 (5th Cir. 1994).

As discussed above, the Court finds that the intervenors' claims do not have a common question of law

or fact with the current action. The intervenors assert claims against Miniace and PMA for breach of fiduciary

duty with respect to the ILWU-PMA Pension Plan based on the implementation of the 26th Amendment.

Neither Miniace, PMA, nor Maritech makes any claims related to the ILWU-PMA Pension Plan or the 26th

Amendment. Therefore, there are no common questions of law.

The intervenors assert that a common question of fact exists because Miniace refers to the 26th

Amendment in his Complaint. However, Miniace's claims do not depend on whether he was offered

compensation from PMA for implementing the 26th Amendment in 1997. Specifically, Miniace claims that he

United States District Court

For the Northern District of California

1   is entitled to: 1) a bonus for remaining employed from March 6, 2001 to March 6, 2004; 2) a bonus for

2   reaching productivity goals in 2003; 3) a severance award for being terminated without cause; 4) waiting time

3   penalties for PMA's failure to pay wages immediately upon termination; and 5) damages for intentional infliction

4   of emotional distress.  These claims raised by Miniace do not raise common questions of fact with intervenors'

5   complaint, which deals with the enactment of the 26th Amendment in 1997.

6           Perhaps recognizing the weakness of their argument, intervenors focus their discussion in the reply brief

7   on intervention under Rule 24(b) for the limited purpose of modifying the protective order in this case.

8   Intervenors claim that the protective order will prevent them from obtaining documents related to any financial

9   incentives to implement the 26th Amendment.  However, intervenors do not identify any documents that the

10  parties in the action are withholding because of the protective order.

11          Intervenor Spinosa asserts that he attempted to obtain relevant information regarding the 26th

12  Amendment from PMA after the Miniace Complaint was filed, but has been unsuccessful.  See Spinosa Decl.

13  at ¶ 2.  However, PMA received information requests from ILWU regarding the 26th Amendment in 2001 and

14  2002.  Epperson Decl. at ¶ 6.  The ILWU disputed the production of information by PMA and brought the

15  issue to the National Labor Relations Board ("NLRB"), which found in favor of PMA.  See Epperson Decl.,

16  Ex. 4.  Since the NLRB's decision, PMA has not received any written requests for information regarding

17  compensation for Miniace related to the 26th Amendment.  Epperson Decl. at ¶ 9.

18          Intervenors claim that they are entitled to intervene to challenge the protective order under San Jose

19  Mercury News v. United States District Ct.--Northern District of California (San Jose), 187 F.3d 1096 (9th

20  Cir. 1999) and Beckman Industries v. International Insurance Co., 966 F.2d 470 (9th Cir. 1992).   However,

21  the circumstances surrounding the current motion differ greatly from San Jose Mercury News and Beckman.

22  In San Jose Mercury News, a newspaper filed a motion to intervene in order to obtain a report regarding

23  sexual harassment claims asserted against the police department.  The newspaper sought the information in

24  order to inform the public about the operations of the police department.  Here, intervenors seek the

25  information for their potential use in litigation.

26          In Beckman Industries, the court allowed intervention for an insured who requested documents from

27  a previous litigation involving the same defendant insurer. The insurer asserted that it could not produce the

28

documents because discovery from the previous case was subject to a blanket protective order. 966 F.2d at 472-474. However, the intervenor had already filed a separate action in state court. Here, intervenors have not filed a separate action against PMA and Miniace, nor have they identified any documents that PMA has refused to produce based on the protective order in this case.

The Court finds that intervention is not appropriate under Rule 24(b) to allow intervenors to challenge the protective order. Intervenors have not filed suit against PMA and Miniace, they have not made a single written request to obtain the documents, and they have not identified any documents relevant to their claims that are subject to the protective order. Therefore, the Court DENIES the motion to intervene under Rule 24(b).

## II.    Motion for preliminary injunction

PMA brings a motion for a preliminary injunction. Specifically, PMA requests an order restraining Coburn and her agents from spending, committing or otherwise disposing of the death benefit proceeds she received under the SEBP without prior written notification to PMA, and written notification to and approval by the Court. PMA also seeks to require Coburn to provide PMA with copies of monthly account statements for the funds during the pendency of this action. PMA argues that the preliminary injunction is proper because PMA is likely to succeed on the merits, because the Board did not approve the alteration to McMahon's SEBP carried out by Miniace and McMahon. Additionally, PMA claims that it will be irreparably harmed if Coburn spends the SEBP proceeds and PMA is unable to recover damages as a result.

The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers. Fed. R. Civ. P. 65. As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion. See Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist., 868 F.2d 1085, 1087 (9th Cir. 1989).

At the extremes, the party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448 (9th Cir. 1988); Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987). "These are not two distinct tests, but rather the opposite ends of a single

**United States District Court**

For the Northern District of California

'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" <u>Miss World</u>, 856 F.2d at 1448 (quoting <u>Rodeo Collection</u>, 812 F.2d at 1217).  However, in any situation, the Court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude.  <u>Big Country</u>, 868 F.2d at 1088 (citing cases); <u>Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.</u>, 762 F.2d 1374, 1376 (9th Cir. 1985) (citing cases).

PMA seeks to alter the status quo by preventing Coburn from accessing funds currently in her possession without Court approval.  When a party requests relief that alters the status quo, the request is subject to higher scrutiny and it carries a heavy burden of persuasion.  <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 32-33 (2nd Cir. 1995).  Regardless of whether it applies this higher burden or not, the Court finds that granting PMA's request is not appropriate at this time.

The Court finds that PMA has not demonstrated a threat of irreparable injury if the preliminary injunction is denied.  The Court has reviewed the financial records submitted under seal.  The Court has found no evidence to support PMA's assertion that the assets will be dissipated by the time this matter can be resolved on the merits.  Coburn's spending habits since 2002 have been reasonable, and PMA acknowledges that Coburn has other significant assets available to her.  Furthermore, PMA waited nearly eight months from filing cross-claims to bring this motion, which undermines its argument that "irreparable injury" is imminent.  Therefore, the Court finds that PMA has demonstrated at most a remote possibility of irreparable harm.

Because of PMA's failure to demonstrate a significant possibility of irreparable harm, the Court must only briefly discuss its likelihood of success on the merits. Based on the evidence submitted, the Court recognizes that the parties raise complicated issues surrounded by highly disputed facts.  The Court finds that Coburn has some likelihood of success on the merits. Coburn presents testimony that Miniace believed he had the authority to modify the SEBP.  Coburn also presents evidence that the SEBP gave management the power to execute agreements and documents, and take other actions to give effect to the Plan.  <u>See</u> Wexler Decl., Ex. 70.  There is also evidence that Board members believed that PMA should not benefit from the death of its employees.  <u>See</u> Wexler Decl., Ex. G at 122.  Miniace's decision to "flip" the plan also coincided with an IRS notice that had implications for the SEBP.

Additionally, Coburn presents evidence that the Board of Directors allowed the President of PMA to

8

United States District Court

For the Northern District of California

1  establish executive compensation for all executives beside himself.  See Wexler Decl., Ex. G at 81.  This is

2  supported by evidence that current executives at PMA have also amended their SEBPs without Board

3  approval.  See Opp'n at 15.

4       The Court provides this discussion of evidence presented in support of Coburn's arguments not

5  because it finds that Coburn will or should succeed on the merits.  Instead, the above discussion merely

6  demonstrates that Coburn has some likelihood of success on the merits, which is sufficient to defeat PMA's

7  motion for preliminary injunction given the dearth of irreparable injury demonstrated by the moving party.

8  Therefore, the Court DENIES PMA's motion for a preliminary injunction.

9

10 **III.    Motion to dismiss**

11      PMA and Maritech Corporation,[3] a wholly owned subsidiary of PMA that provides payroll services

12 to PMA and other customers, filed cross-claims against Michael Corrigan, Corrigan & Company and Benmark

13 West.  These claims were the Twelfth through Nineteenth Causes of Action in PMA's First Amended

14 Counterclaims and Cross-claims.  Cross-defendants Corrigan, Corrigan & Company and Benmark West

15 ("Corrigan defendants") have brought a motion to dismiss, arguing that dismissal of various claims filed by PMA

16 is proper.  The Court will discuss each in turn below.

17

18     **A.    Legal standard**

19      A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can

20 prove no set of facts which would entitle it to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99,

21 102 (1957);  Fidelity Fin. Corp. v. Federal Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986).  All

22 material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.

23 NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

24

25     **B.    ERISA preemption**

26

27

28     [3] For purposes of this motion, the Court will refer to the cross-claimants PMA and Maritech
Corporation as "PMA."

9

United States District Court

For the Northern District of California

The Corrigan defendants argue that ERISA preempts PMA's Twelfth through Fifteenth Causes of Action because PMA's claims relate to the Secured Executive Benefit Plan ("SEBP"). In these Causes of Action, PMA asserts claims for: 1) breach of contract; 2) breach of fiduciary duty; 3) negligence; and 4) vicarious liability for breach of fiduciary duty by others. PMA seeks damages in excess of $10 million, based on the allegedly wrongful payment of benefits to Coburn under the SEBP and commissions paid by PMA to the Corrigan defendants.

ERISA's preemption provision states that ERISA shall "supercede any and all State laws, insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." 29 U.S.C. § 1144(a). Therefore, state laws are preempted when there is an employee benefit plan as defined by ERISA and the state law "relates to" the ERISA plan. Harper v. American Chambers Life Insurance Co., 898 F.2d 1432, 1433 (9th Cir. 1990). The parties agree that the SEBP is an employee benefit plan as defined by ERISA. However, the parties dispute whether PMA's claims against the Corrigan defendants "relate to" the SEBP ERISA plan.

The Corrigan defendants argue that the claims "relate to" an ERISA plan, "because they seek to recover from Corrigan $9.6 million in SEBP benefits PMA claims were wrongfully paid to Coburn." Mot. at 9. PMA asserts that preemption is not appropriate because its claims arise out of PMA's business relationship with an insurance broker, which is a relationship not otherwise regulated by ERISA. Because of this, PMA argues that its state law claims against the Corrigan defendants will not affect a relationship between ERISA participants and do not constitute "alternative enforcement mechanisms" in relation to an ERISA plan.

"It is with great trepidation that we tread into the field of ERISA preemption." Dishman v. UNUM Life Insurance Co. of America, 269 F.3d 974, 980 (9th Cir. 2001). This trepidation is based on the "amorphous contours of the preemption doctrine." Id. After careful consideration of this difficult issue, the Court finds that PMA's claims against the Corrigan defendants are not preempted for the reasons provided below.

The parties agree that the Corrigan defendants are not ERISA fiduciaries. See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1220 (9th Cir. 2000) (noting that professionals providing advice regarding an ERISA plan are not fiduciaries unless they "exercise authority over the plan in a manner other than by usual professional function"). "ERISA does not necessarily preempt relationships between an

10

**United States District Court**
For the Northern District of California

ERISA entity and a third party." <u>Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.</u>, 130 F.3d 1355, 1360 (9th Cir. 1997).  The parties also agree that PMA will not be able to bring a cause of action under ERISA against the Corrigan defendants if these claims are preempted by ERISA.  "The lack of an ERISA remedy against [a third party], though not determinative, counseled the court against preemption."  <u>Id.</u> Therefore, PMA's claims are brought against parties that are not ERISA fiduciaries and, if preempted, will leave PMA with no remedy against the parties.  These factors turn in favor of finding that preemption should not occur.

The difficulty of this issue is demonstrated by the Ninth Circuit's inability to agree on a test for ERISA preemption.  Recognizing that it has "formulated several different, though compatible, tests" for ERISA preemption, it has held that a "core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship." <u>Rutledge</u>, 201 F.3d at 1217-1219 (9th Cir. 2000).[4] The Corrigan defendants argue that the Court should apply a "more holistic analysis guided by congressional intent," as suggested in a footnote in <u>Dishman v. UNUM Life Ins. Co. of America</u>, 269 F.3d 974, 981 n. 15 (9th Cir. 2001).[5]   It is unclear what the differences between the two tests are; however, the Court finds that the distinction between the tests is not important for purposes of the Court's analysis in this case.

The Corrigan defendants argue that PMA's state claims constitute an "alternative enforcement mechanism" because PMA seeks to "duplicate, supplement, or supplant" its civil enforcement remedy under ERISA to recover benefits it believes it is entitled to under the SEBP.  ERISA § 502(a)(1)(B) does provide a beneficiary with a cause of action to "recover benefits due to him under the terms of his plan . . . ."  The Corrigan defendants rely heavily on language from <u>Aetna Health Inc. v. Davila</u>, 124 S.Ct. 2488 (2004), which states that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

---

[4] The court in <u>Rutledge</u> also considered whether: 1) state laws mandate employee benefit structures or their administration; 2) state laws preclude uniform administrative practice; and 3) state laws provide alternative mechanisms for employees to obtain ERISA plan benefits.  201 F.3d at 1217-1218.

[5] The court in <u>Dishman</u> stated: "First, we note that the Supreme Court's recent cases have eschewed such multi-factor tests in favor of a more holistic analysis guided by congressional intent.  Second, though perhaps useful tools in other contexts, these tests are of marginal utility, where, as here, the question boils down to whether state tort law 'relates to' an ERISA plan."  269 F.3d at 981 n. 15.

therefore preempted." Id. at 2495.

However, Davila provided a much different set of facts than the current case.  In Davila, plaintiff was a participant in an ERISA-regulated employee benefit plan who was denied coverage by the health care company administering the plan. He filed suit alleging injuries caused by the health care provider's refusal to provide certain treatment and services.  Id. at 2493.  The Supreme Court, in finding the state law claims preempted, recognized that the purpose of ERISA "is to provide a uniform regulatory regime over employee benefit plans."  Id. at 2495.  The Court also stated that an individual's cause of action is preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions . . . ."  Id. at 2496.

The Court finds that Davila does not require preemption of PMA's state law claims here, because PMA has not filed those claims against the SEBP plan administrator.  Additionally, the state law claims brought by PMA would not impact the "uniform regulatory regime over employee benefit plans," as the Corrigan defendants are not ERISA fiduciaries.[6]  Finally, PMA entered into an agreement with the Corrigan defendants to provide various services and products, which included obtaining the SEBP and consulting for the SEBP. This agreement created a legal duty outside of duties regulated by ERISA, and it is this separate legal duty which PMA seeks to enforce here.

Under the Corrigan defendants' argument, insurance brokers and consultants could never face liability for wrongdoing related to an ERISA plan, because any claims would be preempted by ERISA but could not be brought under ERISA because insurance brokers are not ERISA fiduciaries.  This contravenes Ninth Circuit precedent, which has found that the "core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship."  Rutledge, 201 F.3d at 1217-1219.

This does not create a "huge loophole," as warned by the Corrigan defendants.  Reply at 6.  For example, the Corrigan defendants assert that PMA's argument would have allowed the plaintiff in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) to file state law claims.  However, in Pilot Life Insurance the plaintiff sued the ERISA plan administrator for the wrongful processing of his benefit claim.  Id. at 43.  Thus an ERISA-

---

[6] The Corrigan defendants do not argue that the state law claims would impact the ERISA regulatory regime.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    regulated relationship was involved, unlike the current case.[7]

2            The Corrigan defendants also argue that preemption is appropriate because PMA's state law claims

3    will require the Court to interpret the provisions of the SEBP.  Although the SEBP provisions will most likely

4    be relevant to adjudicating the state law claims, the claims will depend on legal duties that exist outside of the

5    ERISA plan.  This counsels against preemption.  See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1460

6    (4th Cir. 1997); see also Donald I. Galen, M.D., Inc. v. McAllister, 833 F.Supp. 761, 764 (N.D.Cal. 1992).

7            Accordingly, the Court DENIES the motion to dismiss with respect to preemption.

8

9    **C.      Statute of limitations**

10           The Corrigan defendants assert that the Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes

11   of Action should be dismissed because they fall outside of the two year statute of limitations.  The Sixteenth and

12   Eighteenth Causes of Action allege discussions between Corrigan, Miniace and McMahon regarding lifetime

13   long-term care insurance for certain PMA executives in January-March 2002.  See FAC at ¶¶ 101, 106, 111.

14   The Twelfth, Fourteenth and Fifteenth Causes of Action all relate to actions taken by the Corrigan defendants

15   in April-June 2002.  See FAC at ¶ 101.

16           PMA does not contest the Corrigan defendants' assertion that the events occurred in March 2002, and

17   therefore would fall outside of the two year statute of limitations for its Cross-claims, which were filed in 2005.

18   However, PMA asserts that the statute of limitations for the claims did not begin to run until 2004 under the

19   "discovery rule."  Under this rule, "a cause of action does not accrue, nor does the statute of limitations start

20   to run, until plaintiff discovers or in the exercise of reasonable diligence should discover the negligent cause of

21   his or her injury."  Russell v. Stanford University Hospital, 15 Cal.4th 783, 786 n. 1 (1997).

22           PMA argues that the claims are timely under the "discovery rule" because the Board of Directors and

23   its Compensation Committee did not learn about the Amendment to the SEBP or the lifetime, long-term

24   insurance procured by Corrigan, Miniace and McMahon until 2004.  See FAC at ¶¶ 23-35.  According to

25   PMA's claims, "the Board of Directors was empowered to 'fix [the] compensation [of all officers, agents and

26

27   _____

28           [7] It is telling that, in support of its preemption argument, the Corrigan defendants cite only Ninth Circuit cases involving beneficiaries who filed state law claims against ERISA participants.

13

1   employees of the corporation]." Id. at ¶ 11.  However, the claims make no mention of whether the Board of

2   Directors delegated this authority to other officers or agents in the corporation.  Additionally, PMA appears

3   to contradict itself in its opposition when it states that "corporate officers other than Miniace and McMahon

4   had no authority to set the compensation and benefits paid to Miniace and McMahon."  Opp'n at 16.

5       PMA does not state in its Cross-claims whether officers or agents of the company were involved in

6   the SEBP or long-term insurance.  PMA, in its claims, makes vague reference to Miniace, McMahon and "one

7   other PMA executive" receiving lifetime, long-term insurance.  FAC at ¶ 101. If this other PMA executive, or

8   any other corporate agents, were authorized to be involved in the procurement of the insurance and were aware

9   of what transpired, it would prevent PMA from claiming that the knowledge of this matter could not be imputed

10  to the corporation because it fell outside the "subject matter of the agency."  If notice has been provided to the

11  agent within the scope of his or her agency, then notice to the corporation has occurred.  Primm v. Joyce, 87

12  Cal.App.2d 288, 291-92 (1948).       According to California Civil Code § 2332, "both principal and agent

13  are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of

14  ordinary care and diligence, to communicate to the other."  It is clear that knowledge of the insurance policy

15  and SEBP Amendment by McMahon and Miniace does not constitute implied notice to PMA, because they

16  are alleged to be part of the wrongful behavior.  See Display Research Labs. v. Telegen Corp., 133 F.Supp.2d

17  1170, 1172 (N.D.Cal. 2001).  Additionally, if McMahon and Miniace misled other corporate officers into

18  believing that the Board of Directors had approved the benefits, then the discovery rule may apply.

19      However, it is unclear to the Court: 1) what authority other PMA agents had from the Board of

20  Directors to be involved in the compensation and benefits to the top officials in the company and 2) what those

21  agents knew in 2002.  If agents were authorized to be involved in executive compensation for Miniace,

22  McMahon and the third executive under the lifetime, long-term benefit plan, then these facts would "relat[e]

23  to the subject matter of the agency" obtained by the agent "while acting as such within the scope of his

24  authority." 2 B. Witkin, Summary of California Law: Agency § 101.

25      Because PMA has left this matter unclear based on its pleadings, the Court GRANTS the Corrigan

26  defendants' motion to dismiss the Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action,

27

28

14

but with leave to amend subject to the discussion above.[8]

### D.    Breach of fiduciary duty

In the Thirteenth and Seventeenth Causes of Action, PMA asserts that the Corrigan defendants breached their fiduciary duty as PMA's insurance brokers.  The Corrigan defendants move to dismiss these claims, arguing that PMA cannot state a cause of action for breach of fiduciary duty against an insurance broker.  California courts have recognized that "it is unclear whether a fiduciary relationship exists between an insurance broker and an insured."  <u>Hydro-Mill Company, Inc. v. Hayward, Tilton and Rolapp Insurance Associates, Inc.</u>, 115 Cal.App.4th 1145, 1156 (2004).

The parties agree that the relationship between a broker and the insured does not rise to the level of the attorney/client relationship.  PMA provides a number of cases to support its assertion that the Corrigan defendants had "special" or "heightened" duties; however, none of the cases cited by PMA provides for a breach of fiduciary duty claim by an insured against its broker.  <u>See</u> <u>Jones v. Grewe</u>, 189 Cal.App.3d 950, 954-55 (1987) (plaintiff asserted cause of action for negligence); <u>Kurtz, Richards, Wilson & Co.</u>, 12 Cal.App.4th 1249, 1257 (1993) (fraud, negligent misrepresentation and negligence); <u>Free v. Republic Insurance Co.</u>, 8 Cal.App.4th 1726, 1729 (1992) (negligence).

This Court will not expand the doctrine of fiduciary duty to include insurance brokers, given that it has not been recognized by California courts.  Therefore, the Court GRANTS the motion to dismiss with respect to the Thirteenth and Seventeenth Causes of Action with leave to amend.[9]

### E.    Conspiracy and aiding and abetting

In the Nineteenth Cause of Action, PMA asserts a claim of vicarious liability against the Corrigan defendants for breach of fiduciary duty by others.  PMA claims that "each of the Corrigan companies joined

---

[8] As discussed below, the Seventeenth Cause of Action is dismissed with leave to amend.  Therefore, the Court will not address whether the statute of limitations applies.

[9] PMA requests that the Court, if it is inclined to grant the motion to dismiss on these claims, treat them as claims for professional negligence or breach of the covenant of good faith and fair dealing.  The Court will not choose the proper claim for PMA, but allows PMA leave to amend, taking into consideration the statute of limitations issues discussed previously.

United States District Court

For the Northern District of California

in, and engaged in acts in furtherance of, a conspiracy with Counterdefendant Miniace and McMahon to improperly offer lifetime long-term care insurance to certain PMA executives." FAC at ¶ 114.  PMA also alleges that "Corrigan and each of the Corrigan Companies aided and abetted the breaches of fiduciary duty by Miniace and McMahon with respect to the long-term care insurance as described above and furthered their improper objectives." Id. at ¶ 115.

The Corrigan defendants argue that the allegations relating to conspiracy and aiding and abetting are either redundant or should be alleged in separate causes of action.  However, they present no evidence that the two allegations are redundant.  Additionally, the cause of action is for vicarious liability, not for conspiracy or aiding and abetting.  The Corrigan defendants provide no basis for their assertion that they should be able to defend against the various elements of the allegation separately.  Therefore, the Court DENIES the motion to dismiss with respect to the Nineteenth Cause of Action.

**F.	Summary**

As discussed above, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.  Specifically, the Court finds that: 1) PMA's state law claims are not preempted by ERISA; 2) PMA's Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action are dismissed with leave to amend, in order to allow PMA to more clearly plead their claims in light of the statute of limitations; 3) PMA's Thirteenth and Seventeenth Causes of Action are dismissed with leave to amend, provided the amended claims do not assert a claim of fiduciary duty; and 4) PMA's Nineteenth Cause of Action is not dismissed.

**CONCLUSION**

For the reasons discussed above, the Court hereby DENIES the motion for intervention [Docket #60]; DENIES PMA's motion for preliminary injunction [Docket #83]; and GRANTS IN PART and DENIES IN PART the Corrigan defendants' motion to dismiss [Docket #64].  If PMA chooses to file an amended cross-complaint, it must do so **on or before September 30, 2005**.

**IT IS SO ORDERED.**

1

2    Dated: September 13, 2005

3                                                    _____

4                                                    SUSAN ILLSTON
                                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

17

1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    JOSEPH MINIACE,                              No. C 04-03506 SI

9              Plaintiff,                         **ORDER DENYING MOTION TO
                                                  INTERVENE; DENYING PMA'S**
       v.                                         **MOTION FOR PRELIMINARY**
10                                                **INJUNCTION; AND GRANTING IN**
     PACIFIC MARITIME ASSOCIATION,                **PART THE CORRIGAN DEFENDANTS'**
11                                                **MOTION TO DISMISS**
              Defendant.
12   _____/

13   PACIFIC MARITIME ASSOCIATION,

14            Counterclaimant and
              Cross-Claimant,
15     vs.

16   JOSEPH N. MINIACE; JEANNETTE COBURN;
     MICHAEL E. CORRIGAN;
17   BENMARK, INC.; CORRIGAN & COMPANY;
     and BENMARK WEST,
18
              Counterdefendant and
19            Cross-Defendants.
     _____/
20

21        On July 8, 2005, the Court heard oral argument on ILWU-PMA's motion to intervene, PMA's motion

22   for a preliminary injunction, and a motion to dismiss brought by Michael Corrigan, Corrigan & Company and

23   Benmark West.  Having carefully considered the arguments of counsel and the papers submitted, the Court

24   hereby: DENIES the motion to intervene; DENIES the motion for a preliminary injunction; and GRANTS IN

25   PART and DENIES IN PART the motion to dismiss.

26

27                              **BACKGROUND**

28        Pacific Maritime Association is a non-profit mutual benefit corporation, whose members are maritime

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

shipping carriers that service ports on the West Coast. PMA negotiates and administers collective bargaining agreements for longshoremen and other port workers, as well as oversees employment benefit plans for the workers. Plaintiff Joseph Miniace was President of PMA from 1996 until March 2004. Thomas McMahon was PMA's Chief Financial Officer from 1982 until his death on May 3, 2002.

The dispute before this Court surrounds a death benefit payment under a Secured Executive Benefit Plan (SEBP) to McMahon's widow, Jeannette Coburn, of more than $9,000,000. PMA received $986,383, the amount of premiums paid on McMahon's behalf. PMA claims that Miniace and McMahon altered the SEBP in 2002 to pay the bulk of the death benefits to McMahon's heirs. PMA also claims that the Board of Directors did not know of the 2002 alteration to the SEBP.

PMA terminated Miniace's employment on March 17, 2004. As a result, Miniace filed a complaint against PMA in California Superior Court on July 21, 2004, alleging breach of contract, violation of the labor code, promissory estoppel, and intentional infliction of emotional distress. PMA removed the case to this Court, and filed counterclaims and cross-claims against Miniace, Jeannette Coburn, Michael Corrigan, Benmark, Inc., Corrigan & Company, and Benmark West.

Now before the Court is the motion by the Trustees of the ILWU-PMA[1] Pension and Welfare Plan to intervene; PMA's motion for a preliminary injunction against Jeanette Coburn; and a motion to dismiss brought by Michael Corrigan, Corrigan & Company and Benmark West.

## DISCUSSION

### I.   Motion to intervene

In their capacity as Trustees of the ILWU-PMA Pension and Welfare Plans, James Spinosa, Robert McEllrath, Joseph Wenzl, and Ray Ortiz bring a motion to intervene in this action. They claim that intervention is appropriate under Federal Rule of Civil Procedure 24(a) and (b). Intervenors claim that Miniace, a trustee of the ILWU-PMA pension plan ("the Plan"), breached his fiduciary duty to the Plan because he had a financial incentive in his contract with PMA to reduce contributions to the Plan. The proposed complaint in intervention names Miniace and PMA as defendants.

---

[1] ILWU is the International Longshore and Warehouse Union.

United States District Court

For the Northern District of California

1    At issue is the Twenty-Sixth Amendment to the Plan.  The Plan had a requirement that annual employer

2    contributions must be at least the amount of administrative costs and payments made from the Plan.  However,

3    Miniace proposed a modification in 1997 that allowed employer contributions to be sufficient if they consisted

4    of only 85% of the Plan expenditures.  This proposal was accepted by the President of ILWU and became the

5    26th Amendment.  In order for the Amendment to go into effect, the Plan Trustees were required to seek

6    approval from the Pension Benefits Guaranty Corporation ("PBGC").  Miniace submitted the Amendment to

7    the PBGC without informing other Plan Trustees, and the Amendment was approved.[2]  According to

8    intervenors, the Amendment has resulted in contribution reductions of at least $100 million in Plan Years 1999

9    and 2000.

10    Intervenors allege that Miniace breached his fiduciary duty to the Plan because he had an incentive

11    scheme under his PMA contract that rewarded any decrease in contributions to the Plan.  Intervenors also

12    assert that PMA breached its fiduciary duties because it "appointed Miniace as a Trustee while  conditioning

13    his compensation on successful implementation of the 26th Amendment."  Mot. at 4.  Intervenors draw on

14    language in Miniace's Complaint that he "performed all conditions, covenants and policies required on his part

15    to be performed in accordance with the terms and conditions of his contract with PMA."  Miniace Compl. at

16    ¶ 16.  Intervenors contend that one of these accomplishments was his ability to amend the Plan.  See Miniace

17    Compl. at ¶ 12.

18    Intervenors contend that intervention is appropriate because they learned from Miniace's complaint that

19    his compensation at PMA was conditioned in part on the implementation of the 26th Amendment.  Once they

20    learned of this, intervenors claim that they requested information regarding

21    any financial incentives provided by PMA related to the 26th Amendment, but PMA refused their request.

22    Additionally, intervenors claim that they cannot now obtain this information because of the protective order

23    among the parties in this case.  Intervenors assert that their "principal objective . . . in intervening in this action

24    is to gain access to information regarding the financial incentives offered by PMA to Miniace, which, according

25    to the Complaint, were conditioned on the manner in which Miniace carried out his fiduciary duties as Trustee

26

27    _____

28        [2] The foregoing facts have been taken from intervenors' complaint, which the Court accepts as true for
     purposes of this motion.

United States District Court

For the Northern District of California

1   of the ILWU-PMA Pension Plan."  Reply at 2.

2       The intervenors provide only a brief discussion of whether they meet the standard for intervention under

3   Rule 24(a) or (b).  PMA and Maritech Corporation filed an opposition to the motion to intervene, which was

4   joined by Miniace.  In their reply, intervenors relegate Rule 24(a) to a single footnote and only discuss whether

5   intervention is appropriate under Rule 24(b) "for the limited purpose of modifying the parties' stipulated blanket

6   protective order."  Reply at 2.

7

8       **A.      Rule 24(a)**

9       A motion to intervene under Rule 24(a) is subject to the following four-part test:

10          (1) the motion must be timely; (2) the applicant must claim a "significantly
            protectable" interest relating to the property or transaction which is the
11          subject of the action; (3) the applicant must be so situated that the
            disposition of the action may as a practical matter impair or impede its
12          ability to protect that interest; and (4) the applicant's interest must be
            inadequately represented by the parties to
13          the action.

14   Forest Conservation Council v. U.S. Forest Service, 66 F.3d 1489, 1493 (9th Cir. 1995) (quoting Sierra Club

15   v. U.S. Environmental Protection Agency, 995 F.2d 1478, 1481 (9th Cir. 1993)).

16       The Court finds that intervention under Rule 24(a) is not appropriate because the intervenors have not

17   demonstrated a "signficantly protectable" interest relating to the property subject to this litigation.  This

18   requirement is met only if the resolution of the pending claims actually will affect the intervenor.  Arakaki v.

19   Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003).  Intervenors' claims relate to Miniace's and PMA's

20   involvement in the Plan, specifically the enactment of the 26th Amendment.  These claims are not impacted by

21   the current claims before this Court.

22       Miniace in his complaint seeks compensation under his employment contract with PMA.  Miniace has

23   asserted causes of action for breach of contract, Labor Code violations, promissory estoppel  and intentional

24   infliction of emotional distress.  See Medina Decl., Ex. 1.  These claims do not relate to the ILWU-PMA

25   Pension Plan or the 26th Amendment, and intervenors can file their complaint as an independent action that will

26   not be impacted by the resolution of the action currently before this Court.

27       The Miniace Complaint does make a brief reference to the 26th Amendment.  See Medina Decl. Ex.

28

4

**United States District Court**

For the Northern District of California

1 at ¶ 12.  However, this is background information that demonstrates the quality of his performance as

President. The counter-claims and cross-claims asserted by PMA and Maritech Corporation do not even

mention the 26th Amendment of the ILWU-PMA Pension Plan.  See Medina Decl., Ex. 2.  These claims

involve the Secured Executive Benefits Plan ("SEBP"), alleged misappropriation of directors' fees, and

unauthorized executive benefits. In order to resolve the current disputes, it will not be necessary to litigate the

meaning, negotiation or implementation of the 26th Amendment. Nor will it be necessary to litigate the fiduciary

duties owed to the ILWU-PMA Pension Plan by Miniace and PMA. Therefore, the Court finds it inappropriate

for the intervenors to "inject new, unrelated issues into the pending litigation."  Arakaki, 324 F.3d at 1086.

Based on the Court's finding that the intervenors have failed to demonstrate a "signficantly protectable"

interest relating to the property subject to this litigation, the Court DENIES the motion to intervene pursuant

to Rule 24(a).

### B.      Rule 24(b)

Intervention may be allowed at the Court's discretion when the intervenors' claim and the current action

have a common question of law or fact and allowing intervention "will not unduly delay or prejudice the

adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b).  In determining whether a "common

question" exists, courts should construe the requirement liberally.  Stallworth v. Monsanto Co., 558 F.2d 257,

265 (5th Cir. 1977).  However, intervention under Rule 24(b) is "not intended to allow the creation of whole

new lawsuits by the intervenors."  Deus v. Allstate Insurance Co., 15 F.3d 506, 525 (5th Cir. 1994).

As discussed above, the Court finds that the intervenors' claims do not have a common question of law

or fact with the current action.  The intervenors assert claims against Miniace and PMA for breach of fiduciary

duty with respect to the ILWU-PMA Pension Plan based on the implementation of the 26th Amendment.

Neither Miniace, PMA, nor Maritech makes any claims related to the ILWU-PMA Pension Plan or the 26th

Amendment. Therefore, there are no common questions of law.

The intervenors assert that a common question of fact exists because Miniace refers to the 26th

Amendment in his Complaint.  However, Miniace's claims do not depend on whether he was offered

compensation from PMA for implementing the 26th Amendment in 1997.  Specifically, Miniace claims that he

United States District Court

For the Northern District of California

is entitled to: 1) a bonus for remaining employed from March 6, 2001 to March 6, 2004; 2) a bonus for reaching productivity goals in 2003; 3) a severance award for being terminated without cause; 4) waiting time penalties for PMA's failure to pay wages immediately upon termination; and 5) damages for intentional infliction of emotional distress.  These claims raised by Miniace do not raise common questions of fact with intervenors' complaint, which deals with the enactment of the 26th Amendment in 1997.

Perhaps recognizing the weakness of their argument, intervenors focus their discussion in the reply brief on intervention under Rule 24(b) for the limited purpose of modifying the protective order in this case. Intervenors claim that the protective order will prevent them from obtaining documents related to any financial incentives to implement the 26th Amendment.  However, intervenors do not identify any documents that the parties in the action are withholding because of the protective order.

Intervenor Spinosa asserts that he attempted to obtain relevant information regarding the 26th Amendment from PMA after the Miniace Complaint was filed, but has been unsuccessful.  See Spinosa Decl. at ¶ 2.  However, PMA received information requests from ILWU regarding the 26th Amendment in 2001 and 2002.  Epperson Decl. at ¶ 6.  The ILWU disputed the production of information by PMA and brought the issue to the National Labor Relations Board ("NLRB"), which found in favor of PMA.  See Epperson Decl., Ex. 4.  Since the NLRB's decision, PMA has not received any written requests for information regarding compensation for Miniace related to the 26th Amendment.  Epperson Decl. at ¶ 9.

Intervenors claim that they are entitled to intervene to challenge the protective order under San Jose Mercury News v. United States District Ct.--Northern District of California (San Jose), 187 F.3d 1096 (9th Cir. 1999) and Beckman Industries v. International Insurance Co., 966 F.2d 470 (9th Cir. 1992).  However, the circumstances surrounding the current motion differ greatly from San Jose Mercury News and Beckman. In San Jose Mercury News, a newspaper filed a motion to intervene in order to obtain a report regarding sexual harassment claims asserted against the police department.  The newspaper sought the information in order to inform the public about the operations of the police department.  Here, intervenors seek the information for their potential use in litigation.

In Beckman Industries, the court allowed intervention for an insured who requested documents from a previous litigation involving the same defendant insurer. The insurer asserted that it could not produce the

documents because discovery from the previous case was subject to a blanket protective order. 966 F.2d at 472-474.  However, the intervenor had already filed a separate action in state court.  Here, intervenors have not filed a separate action against PMA and Miniace, nor have they identified any documents that PMA has refused to produce based on the protective order in this case.

The Court finds that intervention is not appropriate under Rule 24(b) to allow intervenors to challenge the protective order.  Intervenors have not filed suit against PMA and Miniace, they have not made a single written request to obtain the documents, and they have not identified any documents relevant to their claims that are subject to the protective order.  Therefore, the Court DENIES the motion to intervene under Rule 24(b).

## II.    Motion for preliminary injunction

PMA brings a motion for a preliminary injunction.  Specifically, PMA requests an order restraining Coburn and her agents from spending, committing or otherwise disposing of the death benefit proceeds she received under the SEBP without prior written notification to PMA, and written notification to and approval by the Court.  PMA also seeks to require Coburn to provide PMA with copies of monthly account statements for the funds during the pendency of this action.  PMA argues that the preliminary injunction is proper because PMA is likely to succeed on the merits, because the Board did not approve the alteration to McMahon's SEBP carried out by Miniace and McMahon.  Additionally, PMA claims that it will be irreparably harmed if Coburn spends the SEBP proceeds and PMA is unable to recover damages as a result.

The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers. Fed. R. Civ. P. 65.  As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion.  See Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist., 868 F.2d 1085, 1087 (9th Cir. 1989).

At the extremes, the party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor.  Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448 (9th Cir. 1988); Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).  "These are not two distinct tests, but rather the opposite ends of a single

'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" <u>Miss World</u>, 856 F.2d at 1448 (quoting <u>Rodeo Collection</u>, 812 F.2d at 1217).  However, in any situation, the Court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude.  <u>Big Country</u>, 868 F.2d at 1088 (citing cases); <u>Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.</u>, 762 F.2d 1374, 1376 (9th Cir. 1985) (citing cases).

PMA seeks to alter the status quo by preventing Coburn from accessing funds currently in her possession without Court approval.  When a party requests relief that alters the status quo, the request is subject to higher scrutiny and it carries a heavy burden of persuasion.  <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 32-33 (2nd Cir. 1995).  Regardless of whether it applies this higher burden or not, the Court finds that granting PMA's request is not appropriate at this time.

The Court finds that PMA has not demonstrated a threat of irreparable injury if the preliminary injunction is denied.  The Court has reviewed the financial records submitted under seal.  The Court has found no evidence to support PMA's assertion that the assets will be dissipated by the time this matter can be resolved on the merits.  Coburn's spending habits since 2002 have been reasonable, and PMA acknowledges that Coburn has other significant assets available to her.  Furthermore, PMA waited nearly eight months from filing cross-claims to bring this motion, which undermines its argument that "irreparable injury" is imminent.  Therefore, the Court finds that PMA has demonstrated at most a remote possibility of irreparable harm.

Because of PMA's failure to demonstrate a significant possibility of irreparable harm, the Court must only briefly discuss its likelihood of success on the merits.  Based on the evidence submitted, the Court recognizes that the parties raise complicated issues surrounded by highly disputed facts.  The Court finds that Coburn has some likelihood of success on the merits.  Coburn presents testimony that Miniace believed he had the authority to modify the SEBP.  Coburn also presents evidence that the SEBP gave management the power to execute agreements and documents, and take other actions to give effect to the Plan.  <u>See</u> Wexler Decl., Ex. 70.  There is also evidence that Board members believed that PMA should not benefit from the death of its employees.  <u>See</u> Wexler Decl., Ex. G at 122.  Miniace's decision to "flip" the plan also coincided with an IRS notice that had implications for the SEBP.

Additionally, Coburn presents evidence that the Board of Directors allowed the President of PMA to

United States District Court

For the Northern District of California

1   establish executive compensation for all executives beside himself.  <u>See</u> Wexler Decl., Ex. G at 81.  This is

2   supported by evidence that current executives at PMA have also amended their SEBPs without Board

3   approval.  <u>See</u> Opp'n at 15.

4       The Court provides this discussion of evidence presented in support of Coburn's arguments not

5   because it finds that Coburn will or should succeed on the merits.  Instead, the above discussion merely

6   demonstrates that Coburn has some likelihood of success on the merits, which is sufficient to defeat PMA's

7   motion for preliminary injunction given the dearth of irreparable injury demonstrated by the moving party.

8   Therefore, the Court DENIES PMA's motion for a preliminary injunction.

9

10   **III.    Motion to dismiss**

11       PMA and Maritech Corporation,[3] a wholly owned subsidiary of PMA that provides payroll services

12   to PMA and other customers, filed cross-claims against Michael Corrigan, Corrigan & Company and Benmark

13   West.  These claims were the Twelfth through Nineteenth Causes of Action in PMA's First Amended

14   Counterclaims and Cross-claims.  Cross-defendants Corrigan, Corrigan & Company and Benmark West

15   ("Corrigan defendants") have brought a motion to dismiss, arguing that dismissal of various claims filed by PMA

16   is proper.  The Court will discuss each in turn below.

17

18       **A.    Legal standard**

19       A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can

20   prove no set of facts which would entitle it to relief.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99,

21   102 (1957);  <u>Fidelity Fin. Corp. v. Federal Home Loan Bank</u>, 792 F.2d 1432, 1435 (9th Cir. 1986).  All

22   material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.

23   <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

24

25       **B.    ERISA preemption**

26

27   ───────────────

28       [3] For purposes of this motion, the Court will refer to the cross-claimants PMA and Maritech Corporation as "PMA."

The Corrigan defendants argue that ERISA preempts PMA's Twelfth through Fifteenth Causes of Action because PMA's claims relate to the Secured Executive Benefit Plan ("SEBP").  In these Causes of Action, PMA asserts claims for: 1) breach of contract; 2) breach of fiduciary duty; 3) negligence; and 4) vicarious liability for breach of fiduciary duty by others.  PMA seeks damages in excess of $10 million, based on the allegedly wrongful payment of benefits to Coburn under the SEBP and commissions paid by PMA to the Corrigan defendants.

ERISA's preemption provision states that ERISA shall "supercede any and all State laws, insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." 29 U.S.C. § 1144(a).  Therefore, state laws are preempted when there is an employee benefit plan as defined by ERISA and the state law "relates to" the ERISA plan.  Harper v. American Chambers Life Insurance Co., 898 F.2d 1432, 1433 (9th Cir. 1990).  The parties agree that the SEBP is an employee benefit plan as defined by ERISA.  However, the parties dispute whether PMA's claims against the Corrigan defendants "relate to" the SEBP ERISA plan.

The Corrigan defendants argue that the claims "relate to" an ERISA plan, "because they seek to recover from Corrigan $9.6 million in SEBP benefits PMA claims were wrongfully paid to Coburn." Mot. at 9. PMA asserts that preemption is not appropriate because its claims arise out of PMA's business relationship with an insurance broker, which is a relationship not otherwise regulated by ERISA.  Because of this, PMA argues that its state law claims against the Corrigan defendants will not affect a relationship between ERISA participants and do not constitute "alternative enforcement mechanisms" in relation to an ERISA plan.

"It is with great trepidation that we tread into the field of ERISA preemption." Dishman v. UNUM Life Insurance Co. of America, 269 F.3d 974, 980 (9th Cir. 2001).  This trepidation is based on the "amorphous contours of the preemption doctrine."  Id.  After careful consideration of this difficult issue, the Court finds that PMA's claims against the Corrigan defendants are not preempted for the reasons provided below.

The parties agree that the Corrigan defendants are not ERISA fiduciaries.  See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1220 (9th Cir. 2000) (noting that professionals providing advice regarding an ERISA plan are not fiduciaries unless they "exercise authority over the plan in a manner other than by usual professional function").  "ERISA does not necessarily preempt relationships between an

10

**United States District Court**

For the Northern District of California

1    ERISA entity and a third party."  Geweke Ford v. St. Joseph's Omni Preferred Care, Inc., 130 F.3d 1355,

2    1360 (9th Cir. 1997).  The parties also agree that PMA will not be able to bring a cause of action under

3    ERISA against the Corrigan defendants if these claims are preempted by ERISA.  "The lack of an ERISA

4    remedy against [a third party], though not determinative, counseled the court against preemption."  Id.

5    Therefore, PMA's claims are brought against parties that are not ERISA fiduciaries and, if preempted, will

6    leave PMA with no remedy against the parties.  These factors turn in favor of finding that preemption should

7    not occur.

8         The difficulty of this issue is demonstrated by the Ninth Circuit's inability to agree on a test for ERISA

9    preemption.  Recognizing that it has "formulated several different, though compatible, tests" for ERISA

10   preemption, it has held that a "core factor leading to the conclusion that a state law claim is preempted is that

11   the claim bears on an ERISA-regulated relationship."  Rutledge, 201 F.3d at 1217-1219 (9th Cir. 2000).[4]

12   The Corrigan defendants argue that the Court should apply a "more holistic analysis guided by congressional

13   intent," as suggested in a footnote in Dishman v. UNUM Life Ins. Co. of America, 269 F.3d 974, 981 n. 15

14   (9th Cir. 2001).[5]   It is unclear what the differences between the two tests are; however, the Court finds that

15   the distinction between the tests is not important for purposes of the Court's analysis in this case.

16        The Corrigan defendants argue that PMA's state claims constitute an "alternative enforcement

17   mechanism" because PMA seeks to "duplicate, supplement, or supplant" its civil enforcement remedy under

18   ERISA to recover benefits it believes it is entitled to under the SEBP.  ERISA § 502(a)(1)(B) does provide

19   a beneficiary with a cause of action to "recover benefits due to him under the terms of his plan . . . ."  The

20   Corrigan defendants rely heavily on language from Aetna Health Inc. v. Davila, 124 S.Ct. 2488 (2004), which

21   states that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil

22   enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

23

24   _____

25        [4] The court in Rutledge also considered whether: 1) state laws mandate employee benefit structures
     or their administration; 2) state laws preclude uniform administrative practice; and 3) state laws provide
26   alternative mechanisms for employees to obtain ERISA plan benefits.  201 F.3d at 1217-1218.

27        [5] The court in Dishman stated: "First, we note that the Supreme Court's recent cases have eschewed
     such multi-factor tests in favor of a more holistic analysis guided by congressional intent.  Second, though
28   perhaps useful tools in other contexts, these tests are of marginal utility, where, as here, the question boils down
     to whether state tort law 'relates to' an ERISA plan."  269 F.3d at 981 n. 15.

therefore preempted." Id. at 2495.

However, Davila provided a much different set of facts than the current case. In Davila, plaintiff was a participant in an ERISA-regulated employee benefit plan who was denied coverage by the health care company administering the plan. He filed suit alleging injuries caused by the health care provider's refusal to provide certain treatment and services. Id. at 2493. The Supreme Court, in finding the state law claims preempted, recognized that the purpose of ERISA "is to provide a uniform regulatory regime over employee benefit plans." Id. at 2495. The Court also stated that an individual's cause of action is preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions . . . ." Id. at 2496.

The Court finds that Davila does not require preemption of PMA's state law claims here, because PMA has not filed those claims against the SEBP plan administrator. Additionally, the state law claims brought by PMA would not impact the "uniform regulatory regime over employee benefit plans," as the Corrigan defendants are not ERISA fiduciaries.[6] Finally, PMA entered into an agreement with the Corrigan defendants to provide various services and products, which included obtaining the SEBP and consulting for the SEBP. This agreement created a legal duty outside of duties regulated by ERISA, and it is this separate legal duty which PMA seeks to enforce here.

Under the Corrigan defendants' argument, insurance brokers and consultants could never face liability for wrongdoing related to an ERISA plan, because any claims would be preempted by ERISA but could not be brought under ERISA because insurance brokers are not ERISA fiduciaries. This contravenes Ninth Circuit precedent, which has found that the "core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship." Rutledge, 201 F.3d at 1217-1219.

This does not create a "huge loophole," as warned by the Corrigan defendants. Reply at 6. For example, the Corrigan defendants assert that PMA's argument would have allowed the plaintiff in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) to file state law claims. However, in Pilot Life Insurance the plaintiff sued the ERISA plan administrator for the wrongful processing of his benefit claim. Id. at 43. Thus an ERISA-

---

[6] The Corrigan defendants do not argue that the state law claims would impact the ERISA regulatory regime.

12

regulated relationship was involved, unlike the current case.[7]

The Corrigan defendants also argue that preemption is appropriate because PMA's state law claims will require the Court to interpret the provisions of the SEBP. Although the SEBP provisions will most likely be relevant to adjudicating the state law claims, the claims will depend on legal duties that exist outside of the ERISA plan. This counsels against preemption. See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1460 (4th Cir. 1997); see also Donald I. Galen, M.D., Inc. v. McAllister, 833 F.Supp. 761, 764 (N.D.Cal. 1992).

Accordingly, the Court DENIES the motion to dismiss with respect to preemption.

### C.    Statute of limitations

The Corrigan defendants assert that the Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action should be dismissed because they fall outside of the two year statute of limitations. The Sixteenth and Eighteenth Causes of Action allege discussions between Corrigan, Miniace and McMahon regarding lifetime long-term care insurance for certain PMA executives in January-March 2002. See FAC at ¶¶ 101, 106, 111. The Twelfth, Fourteenth and Fifteenth Causes of Action all relate to actions taken by the Corrigan defendants in April-June 2002. See FAC at ¶ 101.

PMA does not contest the Corrigan defendants' assertion that the events occurred in March 2002, and therefore would fall outside of the two year statute of limitations for its Cross-claims, which were filed in 2005. However, PMA asserts that the statute of limitations for the claims did not begin to run until 2004 under the "discovery rule." Under this rule, "a cause of action does not accrue, nor does the statute of limitations start to run, until plaintiff discovers or in the exercise of reasonable diligence should discover the negligent cause of his or her injury." Russell v. Stanford University Hospital, 15 Cal.4th 783, 786 n. 1 (1997).

PMA argues that the claims are timely under the "discovery rule" because the Board of Directors and its Compensation Committee did not learn about the Amendment to the SEBP or the lifetime, long-term insurance procured by Corrigan, Miniace and McMahon until 2004. See FAC at ¶¶ 23-35. According to PMA's claims, "the Board of Directors was empowered to 'fix [the] compensation [of all officers, agents and

---

[7] It is telling that, in support of its preemption argument, the Corrigan defendants cite only Ninth Circuit cases involving beneficiaries who filed state law claims against ERISA participants.

13

**United States District Court**
For the Northern District of California

1   employees of the corporation]." Id. at ¶ 11.  However, the claims make no mention of whether the Board of

2   Directors delegated this authority to other officers or agents in the corporation.  Additionally, PMA appears

3   to contradict itself in its opposition when it states that "corporate officers other than Miniace and McMahon

4   had no authority to set the compensation and benefits paid to Miniace and McMahon."  Opp'n at 16.

5        PMA does not state in its Cross-claims whether officers or agents of the company were involved in

6   the SEBP or long-term insurance. PMA, in its claims, makes vague reference to Miniace, McMahon and "one

7   other PMA executive" receiving lifetime, long-term insurance.  FAC at ¶ 101. If this other PMA executive, or

8   any other corporate agents, were authorized to be involved in the procurement of the insurance and were aware

9   of what transpired, it would prevent PMA from claiming that the knowledge of this matter could not be imputed

10  to the corporation because it fell outside the "subject matter of the agency."  If notice has been provided to the

11  agent within the scope of his or her agency, then notice to the corporation has occurred.  Primm v. Joyce, 87

12  Cal.App.2d 288, 291-92 (1948).        According to California Civil Code § 2332, "both principal and agent

13  are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of

14  ordinary care and diligence, to communicate to the other."  It is clear that knowledge of the insurance policy

15  and SEBP Amendment by McMahon and Miniace does not constitute implied notice to PMA, because they

16  are alleged to be part of the wrongful behavior.  See Display Research Labs. v. Telegen Corp., 133 F.Supp.2d

17  1170, 1172 (N.D.Cal. 2001).  Additionally, if McMahon and Miniace misled other corporate officers into

18  believing that the Board of Directors had approved the benefits, then the discovery rule may apply.

19       However, it is unclear to the Court: 1) what authority other PMA agents had from the Board of

20  Directors to be involved in the compensation and benefits to the top officials in the company and 2) what those

21  agents knew in 2002.  If agents were authorized to be involved in executive compensation for Miniace,

22  McMahon and the third executive under the lifetime, long-term benefit plan, then these facts would "relat[e]

23  to the subject matter of the agency" obtained by the agent "while acting as such within the scope of his

24  authority."  2 B. Witkin, Summary of California Law: Agency § 101.

25       Because PMA has left this matter unclear based on its pleadings, the Court GRANTS the Corrigan

26  defendants' motion to dismiss the Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action,

27

28

1    but with leave to amend subject to the discussion above.[8]

2

3         **D.      Breach of fiduciary duty**

4         In the Thirteenth and Seventeenth Causes of Action, PMA asserts that the Corrigan defendants

5    breached their fiduciary duty as PMA's insurance brokers.  The Corrigan defendants move to dismiss these

6    claims, arguing that PMA cannot state a cause of action for breach of fiduciary duty against an insurance

7    broker.  California courts have recognized that "it is unclear whether a fiduciary relationship exists between an

8    insurance broker and an insured."  <u>Hydro-Mill Company, Inc. v. Hayward, Tilton and Rolapp Insurance</u>

9    <u>Associates, Inc.</u>, 115 Cal.App.4th 1145, 1156 (2004).

10        The parties agree that the relationship between a broker and the insured does not rise to the level of

11   the attorney/client relationship.  PMA provides a number of cases to support its assertion that the Corrigan

12   defendants had "special" or "heightened" duties; however, none of the cases cited by PMA provides for a

13   breach of fiduciary duty claim by an insured against its broker.  <u>See</u> <u>Jones v. Grewe</u>, 189 Cal.App.3d 950,

14   954-55 (1987) (plaintiff asserted cause of action for negligence);  <u>Kurtz, Richards, Wilson & Co.</u>, 12

15   Cal.App.4th 1249, 1257 (1993) (fraud, negligent misrepresentation and negligence); <u>Free v. Republic</u>

16   <u>Insurance Co.</u>, 8 Cal.App.4th 1726, 1729 (1992) (negligence).

17        This Court will not expand the doctrine of fiduciary duty to include insurance brokers, given that it has

18   not been recognized by California courts.  Therefore, the Court GRANTS the motion to dismiss with respect

19   to the Thirteenth and Seventeenth Causes of Action with leave to amend.[9]

20

21        **E.      Conspiracy and aiding and abetting**

22        In the Nineteenth Cause of Action, PMA asserts a claim of vicarious liability against the Corrigan

23   defendants for breach of fiduciary duty by others.  PMA claims that "each of the Corrigan companies joined

24   _____

25        [8] As discussed below, the Seventeenth Cause of Action is dismissed with leave to amend.  Therefore,
     the Court will not address whether the statute of limitations applies.
26

27        [9] PMA requests that the Court, if it is inclined to grant the motion to dismiss on these claims, treat them
     as claims for professional negligence or breach of the covenant of good faith and fair dealing.  The Court will
28   not choose the proper claim for PMA, but allows PMA leave to amend, taking into consideration the statute
     of limitations issues discussed previously.

United States District Court

For the Northern District of California

in, and engaged in acts in furtherance of, a conspiracy with Counterdefendant Miniace and McMahon to improperly offer lifetime long-term care insurance to certain PMA executives." FAC at ¶ 114.  PMA also alleges that "Corrigan and each of the Corrigan Companies aided and abetted the breaches of fiduciary duty by Miniace and McMahon with respect to the long-term care insurance as described above and furthered their improper objectives." Id. at ¶ 115.

The Corrigan defendants argue that the allegations relating to conspiracy and aiding and abetting are either redundant or should be alleged in separate causes of action.  However, they present no evidence that the two allegations are redundant.  Additionally, the cause of action is for vicarious liability, not for conspiracy or aiding and abetting.  The Corrigan defendants provide no basis for their assertion that they should be able to defend against the various elements of the allegation separately.  Therefore, the Court DENIES the motion to dismiss with respect to the Nineteenth Cause of Action.

**F.      Summary**

As discussed above, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.  Specifically, the Court finds that: 1) PMA's state law claims are not preempted by ERISA; 2) PMA's Twelfth, Fourteenth, Fifteenth, Sixteenth and Eighteenth Causes of Action are dismissed with leave to amend, in order to allow PMA to more clearly plead their claims in light of the statute of limitations; 3) PMA's Thirteenth and Seventeenth Causes of Action are dismissed with leave to amend, provided the amended claims do not assert a claim of fiduciary duty; and 4) PMA's Nineteenth Cause of Action is not dismissed.

**CONCLUSION**

For the reasons discussed above, the Court hereby DENIES the motion for intervention [Docket #60]; DENIES PMA's motion for preliminary injunction [Docket #83]; and GRANTS IN PART and DENIES IN PART the Corrigan defendants' motion to dismiss [Docket #64].  If PMA chooses to file an amended cross-complaint, it must do so **on or before September 30, 2005**.

**IT IS SO ORDERED.**

1

2   Dated: September 13, 2005

3   _____

4   SUSAN ILLSTON
    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

17