United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MINIACE,<br><br>      Plaintiff,<br>  v.<br>PACIFIC MARITIME ASSOCIATION,<br><br>      Defendant.<br>_____/<br>PACIFIC MARITIME ASSOCIATION, et al.,<br><br>      Counterclaimants and<br>      Cross-Claimants,<br>  vs.<br>JOSEPH N. MINIACE; JEANNETTE COBURN; MICHAEL E. CORRIGAN; BENMARK, INC.; CORRIGAN & COMPANY; and BENMARK WEST,<br><br>      Counterdefendant and<br>      Cross-Defendants.<br>_____/ | No. C 04-03506 SI<br><br>**ORDER DENYING CROSS-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      On March 10, 2006, the Court heard argument on a motion for partial summary judgment brought by cross-defendants Michael Corrigan and Protective Financial and Insurance Services, Inc.[1] Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court DENIES the motion.

---

[1] According to Corrigan, Protective Financial and Insurance Services, Inc., does business as both Corrigan & Company and Benmark West.

**BACKGROUND**

Defendant and counterclaimant Pacific Maritime Association ("PMA") is a "nonprofit mutual benefit corporation" organized and existing under California law. Second Am. Counterclaims and Cross-Claims, ¶ 1. In August 2004, after being sued by its former CEO, Joseph Miniace, PMA filed cross-claims against a number of individuals and companies, including cross-defendants Michael Corrigan and his company Protective Financial and Insurance Services, Inc. PMA claimed that its former officers had granted themselves excessive compensation and benefits, which it sought to recover through its lawsuit.

PMA originally hired Miniace in 1996. Shortly thereafter, PMA, through Miniace and Thomas McMahon, Chief Financial Officer, hired Corrigan to develop a supplemental life insurance plan for PMA executives. Corrigan ultimately developed the Secured Executive Benefit Plan ("SEBP") to serve PMA's needs. A key component of the SEBP involved purchasing large amounts of life insurance on PMA executives and assigning the bulk of the death benefit to PMA.

In 2002, McMahon was diagnosed with terminal cancer. Shortly thereafter, citing a desire to keep PMA from profiting at the death of one of its officers, Miniace, McMahon, and Corrigan discussed amending McMahon's SEBP to make McMahon's wife, Jeanette Coburn, the beneficiary for the bulk of the death benefits, rather than PMA. Later in 2002, when McMahon died, Coburn received a $10 million death benefit that had originally been assigned to PMA; PMA received only $1 million.

Also in 2002, McMahon and Miniace used Corrigan to assist them in having PMA purchase long-term care insurance policies for themselves and for General Counsel Craig Epperson. The aggregate cost of these policies to PMA was a one-time payment of approximately $240,000.

PMA's cross-claims against Corrigan seek recovery of the $10 million that was diverted to Coburn, as well as the $240,000 for the long-term care insurance. In general, PMA's cross-claims allege that its Board did not approve of the SEBP amendment or the long-term care insurance, that Corrigan knew or should have known of this lack of approval, and that Corrigan breached his duty to PMA by assisting with the SEBP amendments and the purchase of the long-term care insurance. Corrigan now moves to dismiss six of PMA's cross-claims.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non- moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [ non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

**DISCUSSION**

Corrigan moves for summary judgment on two different grounds. First, he claims that a number of PMA's claims are barred by the applicable statute of limitations. Second, as to PMA's conspiracy claim, he alleges that there is no issue of fact with respect to Corrigan's knowledge of the conspiracy.

**1.    Statute of Limitations**

Corrigan argues that PMA's causes of action for breach of contract and negligence[2] are barred by the applicable statute of limitations. He argues that PMA had knowledge of the SEBP amendment and the long-term care insurance, through its employees Bettye Page-Wilson and Craig Epperson, well before August 2002. Thus, Corrigan argues, because PMA did not bring its claims until August 2004, its claims are time-barred. The Court finds that an issue of fact remains.

California Code of Civil Procedure § 339 imposes a two-year limitations period on actions brought "upon a contract, obligation, or liability not founded upon an instrument of writing." Cal. Code Civ. P. § 339; *see also FDIC v. McSweeney*, 976 F.2d 532, 534 (9th Cir. 1992). California adheres to the discovery rule, under which "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988).

Because PMA is a corporation, the application of the discovery rule depends upon the knowledge of its employees. California Civil Code § 2332 provides that "both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Cal. Civ. Code § 2332. This rule of imputed notice is limited by the scope of the agency relationship.[3] *See Primm v. Joyce*, 87 Cal. App. 2d 288, 291-92 (Cal. App. 1949) ("[T]he law is well settled that notice to an agent is notice to the principal only as to those things within the scope of the agency."). "The basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the

---

[2] PMA's twelfth and sixteenth cross-claims are for breach of contract, and concern the SEBP amendments and the long-term care insurance, respectively. The thirteenth and seventeenth cross-claims are for negligence, and also concern the SEBP amendments and the long-term care insurance, respectively. Corrigan challenges all four cross-claims in his motion.
Corrigan initially challenged PMA's fourteenth and eighteenth cross-claims as well, both of which are for professional negligence. He has withdrawn his challenge to those cross-claims.

[3] In the corporate context, some courts have focused on the authority of the agent to bind the corporation. *See Moore v. Phillips*, 176 Cal. App. 2d 702, 709 (Cal. App. 1959) ("It is well established that a corporation is not chargeable with the knowledge of an officer or agent who has no authority to bind the corporation, but the contrary is also regarded as the general rule, namely, that notice to an officer or authorized agent of a corporation is notice to the corporation.") (citation omitted).

4

1  agency and material to the subject matter of the agency, and the agent will be presumed to have
2  fulfilled this duty.  The scope of the imputation of knowledge is directly related to the scope of the
3  duty arising from the agency agreement; it has nothing to do with whether the agent actually has the
4  information in question or has it only constructively . . . ." *Triple A Mgmt. Co., Inc. v. Frisone*, 69 Cal.
5  App. 4th 520, 534-35 (Cal. App. 1999); *see also Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034,
6  1058 (C.D. Cal. 2005) ("Not only must the agent possess the information in question, but the agent
7  must possess information that, given the agent's position and other relevant circumstances, should 'in
8  good faith and [in] the exercise of ordinary care and diligence' be passed along to the principal.").

### A.     SEBP Amendment

It is undisputed that Page-Wilson, PMA's Director of Human Resources and Employee Benefits at the relevant time, knew of the SEBP amendment shortly after it was executed.  In May 2002, Page-Wilson obtained the amendment from Miniace, reviewed it, and calculated the amounts that were to be paid to Coburn and PMA.  Fortune Decl., Exh. C at 6, 13, 31, 35-36.  While she had previously understood that PMA was to receive the entire death benefit, in the course of calculating the amounts to be paid to Coburn and PMA, she learned that Coburn would ultimately receive a significantly larger benefit than PMA.  *Id.* at 11, 28-31.

While Corrigan argues that Page-Wilson's knowledge should be imputed to PMA, the Court finds that an issue of fact remains regarding whether Page-Wilson had an obligation to report the SEBP changes to her superiors.  *See Diaz*, 373 F. Supp. 2d at 1059 (whether agents should have disclosed information to defendant constituted a question of fact).  Here, PMA's bylaws vested authority to set compensation and benefits in PMA's Board of Directors.  Medina Decl., Exh. T. Corrigan has offered no evidence to show that this authority was delegated to Page-Wilson.  Further, Page-Wilson's declaration states that she has no authority or decision-making responsibility over the SEBP, and her deposition testimony confirms these assertions.  *See* Page-Wilson Decl., ¶¶ 3-4. Fortune Decl., Exh. C at 37 ("I retain documents, I receive documents, if there are premiums that are to be paid, I pay those premiums.").  Finally, Page-Wilson testified that she was given the 2002 amendment papers by Miniace.  Fortune Decl., Exh. C at 6.  The fact that he was her boss may have

5

kept Page-Wilson from viewing the amendments suspiciously, and may therefore have mitigated any duty to report the amendments to her superiors.[4]

In light of the above, the Court finds that an issue of fact remains and DENIES Corrigan's motion for summary judgment as to the twelfth and thirteenth counterclaims.

### B.     Long-Term Care Insurance

In a similar vein, Corrigan argues that PMA received notice of the long-term care insurance in March 2002, based on the fact that both Page-Wilson and Epperson knew of the purchase of the insurance. It is undisputed that both Page-Wilson and Epperson knew of the long-term care insurance at that time. Page-Wilson learned of it when it was purchased, which she testified was before April 2002. Fortune Decl., Exh. C at 24-27. And Epperson learned of the long-term care insurance when he was sent a letter dated March 1, 2002, informing him that the policy had been purchased. *See* Fortune Decl., Exhs. D at 3-4, E.

For the reasons stated above, the Court finds that an issue of fact remains regarding whether Page-Wilson's knowledge should be imputed to PMA. As to Epperson's knowledge, the Court also finds that an issue of fact remains. Epperson was General Counsel, and in that capacity he attended all board meetings and maintained the minutes of those meetings. Fortune Decl., Exh. D at 9-10. Epperson did not, however, attend executive sessions of the board or meetings of the compensation committee. Medina Decl., Exh. U at 84 ("The determinations with respect to compensation and benefits by the – I should say compensation and bonuses – by the Board – were made in portions of their meetings which I never attended."). Thus, Corrigan has provided no evidence that Epperson knew that the long-term care insurance had not been authorized.

Thus, the Court also DENIES Corrigan's motion for summary judgment as to PMA's sixteenth and seventeenth counterclaims.

---

[4] Corrigan places a large amount of reliance on its argument that Page-Wilson's knowledge should be imputed to PMA because Page-Wilson testified that she had a duty to report employee theft. This argument, however, proves too much – Page-Wilson testified that this duty did not stem from her position, but from her status as an employee of the company. Fortune Decl., Exh. C at 23-24. Thus, Corrigan's argument would mean that notice of the SEBP amendments to any employee of PMA would have been sufficient to impute knowledge to PMA.

6

### 2. Knowledge of Conspiracy

Corrigan also moves for summary judgment on PMA's fifteenth cause of action, which seeks to hold him liable as a co-conspirator for Miniace's and McMahon's alleged breaches of their fiduciary duties. The parties agree that in order for Corrigan to be found liable under this charge PMA must establish that Corrigan knew Miniace and McMahon "sought to amend the SEBP in 2002 without appropriate corporate authority." *See* Mot. at 19 (quoting Joint Case Mgmt. Statement). Under California law, "[t]he conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th

In support of his motion, Corrigan has submitted a declaration stating that he believed that both Miniace and McMahon had the authority to amend McMahon's SEBP in 2002. Corrigan Decl., ¶ 2. Corrigan based this belief on the "grant of very broad powers" to Miniace and McMahon that a 1996 PMA Board resolution contained. *Id.* at ¶ 3. He also believed that it was PMA's policy that, as a non-profit corporation, it "should not profit under the SEBP from the death of one of its executives." *Id.* at ¶ 2. In fact, Corrigan claims that in 1996 he warned Miniace that PMA could "receive a huge windfall profit" if an executive died before retirement, and that Miniace replied that "PMA would find a way to transfer the millions of dollars of . . . death benefits to the executive's beneficiaries." *Id.* at ¶ 5.

In moving for summary judgment based upon evidence of Corrigan's state of mind, Corrigan faces a very high burden. "[Q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment." *Mendocino Envt'l Ctr. v. Mendocino County*, 192, F.3d 1283, 1302 (9th Cir. 1999) (quoting *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985). When a person's mental state is at issue, summary judgment is appropriate only when "*all* reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim." *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) (emphasis in original).

Given this high standard, the Court finds that PMA's evidence, while thin, is sufficient to survive summary judgment. PMA has presented three pieces of evidence that support the inference

7

that Corrigan knew that PMA's board had not authorized the SEBP amendment.[5] First, PMA has produced evidence that the 2002 amendments were backdated by several months. Indeed, Corrigan testified that he personally backdated McMahon's endorsement. Medina Decl., Exh. B at 158. This supports the inference that Corrigan was attempting to disguise the circumstances under which the amendment had been executed. In fact, in his deposition Corrigan implied that this was a reason. *See* Medina Decl., Exh. B at 130-31.

Second, PMA has produced evidence showing that Corrigan wanted to help McMahon after McMahon was diagnosed with cancer. Corrigan testified that he and McMahon had known each other for almost 30 years, and that he considered McMahon a good friend. Medina Decl., Exh. B at 23-25. Further, Corrigan and McMahon did not begin discussing the specifics of amending the SEBP until McMahon was diagnosed with cancer. *Id.* at 126-127. This evidence supports the inference that Corrigan acted for McMahon's benefit, regardless of whether the amendments were authorized.

Finally, PMA has provided documents showing that Corrigan was aware that when significant changes to the SEBP were made in the past, the PMA Board approved the changes. Corrigan sent a draft resolution to the PMA Board in 1996, to authorize and implement the SEBP. Foy Decl., Exh. 2; *see also* Medina Decl., Exh. B at 67-68. Sometime later, he received an executed version of that resolution from PMA. Medina Decl., Exh. B at 69. Still later, when a PMA officer sought a "death benefit only" policy, Corrigan received a resolution from PMA stating that the PMA Board had unanimously approved the policy. Foy Decl., Exh. 3. Yet Corrigan received no such resolution authorizing or approving the amendment to McMahon's SEBP. While not particularly strong, this creates the inference that Corrigan knew no such authorization existed. The magnitude of the change to the payouts to McMahon's SEBP beneficiaries strengthens this inference; if Corrigan had received resolutions memorializing Board approval in the past, he certainly should have expected to see one

---

[5]Corrigan has objected to this evidence on the basis that PMA did not disclose the evidence in its response to Corrigan's contention interrogatories. He has further moved to strike the evidence on that ground. While PMA clearly has a duty to provide supplemental interrogatory answers, the Court finds that there is no prejudice here because PMA obtained the evidence cited above from Corrigan, either through documents that Corrigan produced or through deposition testimony that Corrigan provided. Accordingly, the Court does not share the concern of Corrigan's counsel that use of the evidence would create a mockery of the discovery process. Corrigan's motion to strike is therefore DENIED (Docket No. 294).

given the dramatic effect of the McMahon amendments.

While the above inferences are tenuous, they are not wholly unreasonable. Thus, the Court finds that PMA's claim for vicarious liability against Corrigan survives summary judgment. Accordingly, Corrigan's motion for summary judgment is DENIED as to PMA's fifteenth cause of action.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Corrigan's motion for partial summary judgment (Docket No. 254).

**IT IS SO ORDERED.**

Dated: March 10, 1006

_____
SUSAN ILLSTON
United States District Judge