**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MINIACE,<br><br>      Plaintiff,<br>  v.<br><br>PACIFIC MARITIME ASSOCIATION,<br><br>      Defendant.<br>_____/<br>PACIFIC MARITIME ASSOCIATION, et al.,<br><br>      Counterclaimants and<br>      Cross-Claimants,<br>  vs.<br>JOSEPH N. MINIACE; JEANNETTE<br>COBURN; MICHAEL E. CORRIGAN;<br>BENMARK, INC.; CORRIGAN &<br>COMPANY; and BENMARK WEST,<br><br>      Counterdefendant and<br>      Cross-Defendants.<br>_____/ | No. C 04-03506 SI<br><br>**FINAL PRETRIAL SCHEDULING ORDER** |

On May 16, 2006, the Court held a final pretrial conference in the above captioned matter, which is set for trial beginning May 22, 2006. All parties were represented by counsel. The following matters were resolved:

1. **Bifurcation of court and jury trials:** The parties agree that the SEBP-related ERISA claims must be tried to the Court, and that the other claims may be tried to a jury, as set out specifically at pages 6-7 of the Joint Pretrial Conference Statement. At the pretrial conference, all parties agreed to bifurcate the Court-tried ERISA claims from the jury claims, and to conduct the

ERISA trial first. The jury trial on the remaining issues will take place thereafter, on a date to be set after the conclusion of the ERISA phase. With the exception of PMA's 15th claim for relief against the Corrigan defendants ("claim for relief for vicarious liability for breach of fiduciary duty by others"), the parties anticipate no substantial factual overlap between the issues to be decided in the ERISA trial and the jury trial. To avoid unnecessary duplication, all parties except the Corrigan parties agreed to waive a jury on any issues decided by the Court in the ERISA trial which must also be decided in the jury trial.[1]

2. **Trial exhibits**: The parties will submit a single list of proposed trial exhibits, truncated to include only the exhibits necessary to the ERISA trial. No later than May 22, 2006, the first day of trial, the parties shall submit both the joint exhibit list and copies of their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The court shall be provided with three sets (for the court, the file and the witness) and each side shall provide one set for the other side.

3. **Findings of fact and conclusions of law**: The parties shall, no later than May 22, 2006, present the court with their proposed Findings of Fact and Conclusions of Law, both in hard copy and on disk in WordPerfect 10 format. The parties shall meet and confer to present as many agreed-upon findings of fact as possible. The agreed-upon findings should be clearly designated "joint" findings and, upon such agreement, no further evidence on these points will be required absent further direction from the Court.

4. **Trial schedule**: The trial day runs from 8:30 a.m. until 2:00 p.m., with a 15 minute break at 10:00 a.m. and a 30 minute break at 11:45 a.m., all times approximate.

5. **Timing of trial**: The parties estimated that the trial should take approximately eight

---

[1] The Corrigan parties have effectively moved to dismiss PMA's 15th claim for relief. Both parties requested and received leave to file a memorandum on this issue by no later than 10 a.m. on May 18, 2006. The status of PMA's 15th claim will be resolved by the Court by separate order after receipt of these memoranda.

2

days. Based on this estimate, each side[2] shall have up to one hour for opening statements; up to seventeen hours total for presentation of evidence, which includes direct and cross-examination of live witnesses and presentation of all exhibits; and up to one hour for closing arguments.

6. **Motions in limine:** The parties filed 23 motions in limine, as follows:

**Motions by PMA:**

PMA No. 1: to exclude evidence of Jeanette Coburn's financial condition or disposition of funds: GRANTED, except as to funds received from PMA and Maritech and proceeds from life insurance obtained through PHA. *See also* Miniace/Coburn No. 5.

PMA No. 2: to exclude evidence regarding alleged anti-union bias of PMA or its members: GRANTED, except evidence demonstrating that corporate governance decisions (Board minutes, delegation of authority etc.) were based on the need or desire to keep information from the ILWU.

PMA No. 3: to exclude evidence regarding Miniace's unemployment hearing: GRANTED.

PMA No. 4: to exclude evidence regarding policy changes after Miniace's termination: DENIED. To the extent that FRE 407 (subsequent repairs) applies to such policy changes, such evidence will not be admitted to prove "negligence" or "culpable conduct" by PMA. Such evidence may be relevant to Miniace's contentions concerning how PMA was governed prior to his termination and whether he had been delegated various authorities over the SEBP. To this extent it would be admissible.

PMA No. 5: to exclude evidence regarding Hemingway's alleged bias towards Miniace: DENIED; goes to bias and its probative value outweighs its prejudicial effect.

PMA No. 6: to exclude evidence regarding compensation decisions made after Miniace's termination: DENIED, except with respect to Mercer exhibits.

PMA No. 7: to exclude testimony and expert reports of Bruno Falvo: DENIED, to the

---

[2] For these purposes, PMA constitutes one side, and Miniace, Coburn and Corrigan represent one side.

3

extent that the motion is based on general lack of "requisite reliable foundation" in accordance with *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). This ruling is without prejudice to specific objections to specific questions at trial.

### Motions by Miniace and Coburn:

Miniace/Coburn No. 1: to exclude evidence regarding PMA's 1st, 2nd, 3rd, 4th, 22nd and 23rd cross-claims for relief: GRANTED IN PART. Under 29 U.S.C. § 1132(a)(2), an ERISA beneficiary may bring an action against an ERISA fiduciary to recover losses to an ERISA plan or profits made by the fiduciary through wrongful use of plan assets. Neither occurred in this case. Instead, PMA seeks to bring a claim under § 1132(a)(2) to "ensure that [the SEBP's] death benefits are disbursed in accordance with the [original] terms of the SEBP." PMA, however, has not provided the Court with a single case in which a party has maintained a suit under § 1132(a)(2) based on a non-financial injury to the plan. Rather, every case brought under § 1132(a)(2) that this Court has reviewed has involved monetary losses or misappropriation of plan assets. Accordingly, the Court finds that PMA may not maintain its causes of action under § 1132(a)(2). Rather, the appropriate vehicle for this lawsuit is the "catchall" provision of § 1132(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489 (1996). Thus, the motion is GRANTED as to PMA's 22nd cross-claim against Miniace and 23rd cross-claim against Coburn, both based on § 1132(a)(2); and the motion is DENIED as to PMA's 1st claim against Coburn and 2nd, 3rd and 4th claims against Coburn and Miniace., all based on § 1132(a)(3).

Miniace/Coburn No. 2: to exclude evidence regarding Maritech's 27th and 28th cross-claims for relief: GRANTED. Coburn seeks to dismiss these claims by Maritech based on the one-year limitation period set out in California Code of Civil Procedure § 366.2. These claims seek return of directors' fees and benefits provided by Maritech to McMahon before McMahon's death, and could have been brought against him before he died. They are subject to CCP § 366.2 and are thus time-barred. See *Collection Bureau of San Jose v. Rumsey*, 24 Ca. 4th 301, 313 (2000).

Miniace/Coburn No. 3: to exclude PMA expert witness Lawrence Brody's "amended and supplemental exhibit C": DENIED.

4

Miniace/Coburn No. 4: to exclude testimony by late-disclosed witnesses Hayashi, Sweedlund, Leckrone, Saltgaver, Sabarese and Parris: DENIED as to Saltgaver. GRANTED as to the other listed witnesses; testimony by these witnesses will be excluded from PMA's case in chief. This ruling is without prejudice to calling such witnesses as impeachment witnesses.

Miniace/Coburn No. 5: to exclude evidence of Coburn's wealth or financial condition: GRANTED as to Coburn's wealth or financial condition; DENIED as to monies received from PMA or Maritech and proceeds from life insurance obtained through PMA. *See also* PMA No. 1.

Miniace/Coburn No. 6: to exclude evidence regarding line of credit procured by Tom McMahon: GRANTED; FRE 403, 608(b).

Miniace/Coburn No. 7: to exclude evidence regarding PMA's 20th cross-claim for an accounting: GRANTED.

Miniace/Coburn No. 8: to exclude evidence pertaining to John Cook's and David Kuhner's investigations: DENIED. Such testimony may be relevant to the Board's decision concerning Miniace bonuses; as such, it would be admitted not for the truth of the report itself, but rather to show that it was provided to the Board. Further, any party admissions, or authorized admissions, may be introduced if relevant.

Miniace/Coburn No. 9: to exclude evidence regarding severance proceedings: GRANT.

Miniace/Coburn No. 10: to exclude evidence regarding McKenna's employment contract, of which the Board was unaware prior to Miniace's termination: DENY; may be relevant to Miniace's breach of fiduciary duty and may demonstrate "intent, plan or absence of mistake" FRE 404(b).

Miniace/Coburn No. 11: to exclude Maritech's supplemental objections and responses to Coburn's first set of interrogatories: GRANTED; untimely and prejudicial.

**Motions by Corrigan:**

Corrigan No. 1: to exclude testimony and reports of Gregory Wimmer: DENIED, to the extent that the motion is based on general lack of "requisite reliable foundation" in accordance with *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526

5

U.S. 137 (1999). This ruling is without prejudice to specific objections to specific questions at trial.

<u>Corrigan No. 2: to exclude testimony by PMA's experts as to McMahon's retirement on April 30, 2002</u>: DENIED.

<u>Corrigan No. 3: to preclude evidence about Corrigan's second home in France and his air travel in private air planes</u>: DENIED. Evidence of the close personal relationship between Corrigan and McMahon, Coburn and Miniace may be relevant to bias, interest or motive.

<u>Corrigan No. 4: to preclude evidence about Corrigan's being named as original or successor executor and trustee for McMahon's or Coburn's wills or trusts:</u> DENIED. Evidence of the close personal relationship between Corrigan and McMahon, Coburn and Miniace may be relevant to bias, interest or motive.

7. **Miscellaneous:** Each party shall give the other 48 hours' notice of the witnesses it expects to call at trial. The parties shall cooperate in calling witnesses when they are available, so as to minimize waste of Court time and inconvenience to witnesses.

**IT IS SO ORDERED.**

Dated: May 17, 2006

_____
SUSAN ILLSTON
United States District Judge